**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
as subrogee of
ROCKCLIFF ENERGY II, LLC,

        Plaintiff,

        vs.                                                    No. 20-CV-00079 WJ/CG

SEDONA CONTRACTING, INC.,
and
MOSAIC POTASH CARLSBAD INC.,

        Defendants.

_____

MOSAIC POTASH CARLSBAD INC.,

        Cross-Claimant,

        vs.

SEDONA CONTRACTING, INC.,

        Cross-Defendant.

_____

MOSAIC POTASH CARLSBAD INC.,

        Third-party Plaintiff,

        vs.

ROCKCLIFF OPERATING NEW MEXICO, LLC,

        Third-party Defendant.
_____

**MEMORANDUM OPINION AND ORDER**
**DENYING ROCKCLIFF ENERGY II, LLC'S MOTION TO DISMISS SEDONA's**
**THIRD PARTY CLAIMS IN SEDONA's FIRST AMENDED COMPLAINT**

THIS MATTER comes before the Court upon motion (Doc. 64) (the "Motion") by Rockcliff Energy II, LLC ("Rockcliff' and "Movant") for dismissal of the third party claims filed against it by Sedona Contracting Inc. ("Sedona"), as set forth in the Amended Third Party Complaint against Rockcliff Operating New Mexico, LLC[1] (Doc. 58) (the "Amended Complaint"). In the Motion, Rockcliff claims that (1) Rockcliff should not be a party to the proceedings because it has been fully compensated by St. Paul Fire and Marine Insurance Company ("St. Paul") and thus, under Fed. R. Civ. P. 17(a), St. Paul is the real party in interest; (2) Sedona fails to allege an injury that supports actionable damages; (3) Sedona fails to allege facts sufficient for the Court to infer a plausible connection between the harm alleged in the Amended Complaint and Rockcliff's conduct; (4) the intervening actions and failure to mitigate by Sedona and Mosaic Potash Carlsbad Inc. ("Mosaic") negate recovery under the doctrine of avoidable consequences; and (5), because Rockcliff is only responsible for damages occurring prior to such intervening actions by Sedona and Mosaic, damages that Sedona admits are *de minimis*, the jurisdictional damage requirement of $75,000 under 28 U.S.C. § 1332(a)(1) is not met.

Having reviewed the parties' pleadings and the applicable law, the Court finds that the Amended Complaint survives Rockcliff's arguments for dismissal.

---

[1] Rockcliff Operating New Mexico, LLC is a wholly owned subsidiary of Rockcliff Energy II, LLC. Rockcliff Operating New Mexico, LLC is an LLC organized under the laws of the state of Texas, and licensed to operate within the State of New Mexico. Doc. 9 at 12.

## BACKGROUND

This lawsuit arises from the rupturing of a wastewater polyline[2] (the "pipe" or "water pipe") near Fisherman's Lane in Loving, New Mexico. Doc. 64 at 1-2. The pipe, installed by Rockcliff's predecessor in interest, RB Operating Company ("RB Ops"), was installed beneath the ground following an agreement between RB Ops and Mosaic's predecessors in interest, Candelario and Emma Carrasco, some time before the incident at issue for purposes of disposing of waste salt water from the Candelario 24-I well. *Id*. at 1; *see also* Doc. 9 at 13. According to Sedona, the rupture occurred on the public right of way adjacent to Mosaic's property. Doc. 58 at 9-11.

Later, Mosaic and Sedona entered into an arrangement whereby Sedona was permitted use and occupancy of a portion of property owned by Mosaic as a temporary construction easement, temporary construction lay-down yard, and equipment storage yard for purposes of constructing a replacement bridge over the Pecos River. Doc 64 at 5-6; Doc. 17 at 70; Doc. 17-1. There is no evidence suggesting that Rockcliff was informed of this arrangement. Doc. 64 at 5-6.

During reconstruction in the area, a piece of Sedona's equipment, driving over the Rockcliff water pipe, caused the pipe to rupture within the alleged territorial bounds of a public easement. *Id*.; Doc. 26 at 1, 3; Doc. 58 at 6-11. When the rupture initially occurred, very little fluid was released—a "*de minimis*" amount insufficient to cause damage. Doc 64 at 5-6; Doc. 59 at 13.

---

[2] While the record is unclear as to what distinguishes a polyline from a simple polymer waterline, if anything, the Court takes notice of certain internet and court uses of the term for purposes of clarity. A wastewater polyline is a water pipeline that moves fluid, such as sewage and wastewater, from "points" and junctions. *See Gray v. Chesapeake Exploration, L.L.C.*, 2015 U.S. Dist. LEXIS 8222, at *6 (W.D. Tex. 2015); *see also* Memorandum, Environmental Science Association to City of Pacifica, attachment A (2018) https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&ved=2ahUKEwiQmM7XvbLtAhUCwFk KHWV2ACUQFjAHegQIBxAC&url=http%3A%2F%2Fwww.cityofpacifica.org%2Fcivicax%2Ffilebank%2Fblobd load.aspx%3FBlobID%3D13712&usg=AOvVaw1Jr099CP_hp6lHqzxulBqA (last accessed Dec. 3, 2020); City of Hutchinson Government, Sewerage Collection Lines, City of Hutchinson Sanitary Sewer polyline layer (2002) https://catalog.data.gov/dataset/sewerage-collection-lines-city-of-hutchinson-santiary-sewer-polyline-layer-published-in-2002-1- (last accessed Dec. 3, 2020).

Following the rupture, Sedona contacted Mosaic and Mosaic installed two clamps to stop the rupture and release of fluid from the pipe. Doc 64 at 5-6; Doc 58 at 34-35. Subsequently, someone whose identity is unknown removed one of the clamps. Doc 64 at 5-6; Doc. 58 at 8.

As a result of the removal of the clamp, the pipe spilled more fluid into the area, damaging wiring and concrete forms and necessitating use of additional concrete, subcontractor remobilization, and additional labor and equipment. Doc. 69 at 13. Four days later, Rockcliff was made aware of the damage to its pipe and sent an employee to fix the pipe and coordinate clean-up of the site. Doc. 14.

Sedona now seeks damages from Rockcliff on the grounds that it breached a duty of ordinary care in relation to the pipe at issue, including negligent maintenance, operation, burying, marking, securing, protecting, casing and repairing the pipe. Doc. 58 at 16. Mosaic seeks damages from Sedona on the grounds that it breached a duty to exercise reasonable and ordinary care in its use of Mosaic's property by operating its construction equipment off of regularly established road areas thereby rupturing Rockcliff's water pipe and damaging Mosaic's property. Doc. 17. Mosaic also seeks damages from Rockcliff, and contends that Rockcliff breached its duty to Mosaic by negligently maintaining, operating, and repairing the water pipe. In the Motion, Rockcliff seeks dismissal of all the claims against it. Doc. 64.

**LAW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

For a complaint to survive a motion to dismiss, it must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citing Fed. R. Civ. P. 8(a)(2)) (internal quotations omitted). A claim can only be facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019). If a plaintiff's stated facts permit the court to infer "more than the mere possibility of misconduct," then the complaint properly states a claim; however, if the claim is not nudged by the facts "across the line from conceivable to plausible," the complaint must be dismissed. *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018); *Twombly*, 550 U.S. at 570.

The Tenth Circuit has since explained the following:

> The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.

*Robbins v. Oklahoma*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). Thus, a plaintiff must frame his complaint with enough factual matter as to suggest that he is entitled to relief, *See Twombly*, 550 U.S. at 556, and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (applying *Twombly*).

In reviewing the Motion, the Court must assume all the complaint's factual allegations are true, but it is not bound to accept legal conclusions, including any "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Court "should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan.*

*Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In deciding whether the plaintiff's stated claim for relief is adequate, the Court views "the totality of the circumstances as alleged in the complaint in the light most favorable to [the nonmovant]." *Jones v. Hunt*, 410 F.3d 1221, 1229 (10th Cir. 2005).

While the sufficiency of a complaint is generally evaluated on its contents alone, the court may also consider at the motion to dismiss stage "documents that the complaint incorporates by reference" and "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Gee v. Pacheco*, 627 F.3d 1178, 1886 (10th Cir. 2010).

This case is based on federal diversity jurisdiction, but because Mosaic's claims sound in state law and the parties have stipulated that New Mexico law governs, the Court must apply New Mexico law. Doc. 25 at 3. In so doing, the Court must either follow the decisions of the New Mexico Supreme Court or attempt to predict what the New Mexico Supreme Court would do. *See Coll v. First Am. Title Ins. Co.,* 642 F.3d 876, 886 (10th Cir. 2011); *Federated Serv. Ins. Co. v. Martinez*, 529 F. App'x 954, 957 (10th Cir. 2013) (if no controlling state supreme court case, district court must predict how such court would rule based on intermediate appellate decisions, decisions of other states, federal decisions, and general weight and trend of authority).

## DISCUSSION

### I.    Compensation by St. Paul

Citing Fed. R. Civ. P. 17(a), which holds that an action must be prosecuted in the name of a real party in interest to the proceedings, Rockcliff contends that it is not a necessary party because it has been fully compensated by St. Paul, making St. Paul the de facto party in interest. In building its argument, Rockcliff refers to *Federated Mut. Ins. Co. v. Ever-Ready Oil Co.*, which held that

when an insurance carrier has paid for the loss suffered by an insured, it is the only party still "in interest." No. 09-CV-857 JEC/RHS, 2012 U.S. Dist. LEXIS 199663, at *10-11 (D.N.M. 2012) (citing *State Farm Mut. Auto. Ins. Co. v. Found Reserve Ins. Co.*, 78 N.M. 359, 364 (Ct. App. 1967)).

While Rockcliff is correct that New Mexico law governs under *K-B Trucking Co. v. Riss Int'l. Corp.*, its argument otherwise misunderstands precedent on the matter. 763 F.2d 1148, 1153 (10th Cir. 1985) (holding that in diversity cases, the identity of a real party in interest is determined by the substantive law of the forum state). Namely, Rockcliff cites to one sentence in *Ever-Ready* which seems, without context, to support its argument.   However, Rockcliff overlooks the orientation of the parties in that case, as well as the underlying reasoning. *Ever-Ready* does state that "when an insurance carrier has paid for the entire loss suffered by an insured, it is the only real party in interest." 2012 U.S. Dist. LEXIS, at *10. However, this is based on *Moody v. Stribling*'s holding that "[a] real party in interest is one who owns the right being enforced or who is in a position to discharge the defendant from liability." 127 N.M. 630 (Ct. App. 1999), *cert. denied* , 127 N.M. 389 (1999). To put this in simple terms, if a plaintiff seeks damages from a defendant, and said defendant's insurance provider has paid all of plaintiff's damage claims, then plaintiff has been made whole. Thus, the insurance carrier is the only remaining party in interest as between the insurance carrier and the defendant because only the insurance carrier, and not the plaintiff who has already recovered, may seek to recover from the defendant the damages paid to plaintiff. Upon payment of the damages by the insurance provider to the former plaintiff, the insurance provider becomes the party "who is in a position to discharge the defendant from liability," and the former plaintiff who has already been paid becomes unnecessary to determining liability as it may exist between the defendant and the party who suffered financial loss as a result

7

of defendant's actions. 2012 U.S. Dist. LEXIS, at *10. This was the exact posturing of the parties in *Ever-Ready*.

Here, however, St. Paul is Rockcliff's insurance provider, not Sedona's or Mosaic's. It appears that St. Paul has paid out its insurance coverage to Rockcliff for the damages arising from Sedona's damage of Rockcliff's pipe, but not for the presently undetermined damages alleged against Rockcliff by Sedona and Mosaic. Consistent with *Ever-Ready*, if the only pending allegations were that Rockcliff was owed damages by Sedona, then yes, St. Paul would be in a position as subrogee to discharge Sedona for the liability because, in effect, those damages are now owed to St. Paul. However, Sedona seeks damages from Rockcliff due to its alleged failure to maintain the pipe and the consequent harm allegedly suffered by Sedona. Unless St. Paul's insurance payment to Rockcliff was sufficient to cover such liability on Rockcliff's behalf, which Rockcliff does not allege to be the case, dismissing the allegations by Sedona could create a potential "windfall" for Rockcliff in that it would be absolved of unpaid liability that may be substantiated as these proceedings progress.

Alternatively, if the insurance policy between Rockcliff and St. Paul provides that St. Paul *is* responsible for the damages owed by Rockcliff to Sedona or Mosaic, then St. Paul has not paid the full loss amount to Rockcliff and, therefore, Rockcliff remains a real party in interest. *See Garcia v. Hall*, 624 F.2d 150, 151 (10th Cir. 1980) (if an insurance provider has made only a partial reimbursement, both the insurer and the insured are real parties in interest); s*ee also Amica Mutual Ins. Co. v. Maloney*, 120 N.M. 523, 527-528 (1995) ("when the amounts paid by the insurer cover only part of the insured's loss, leaving an excess loss to be made good by the tortfeasor, the insured retains the right of action for the entire loss and holds the insurer's subrogated interest in trust").

Thus, Rockcliff is not excused from this litigation.

## II.    Failure to Allege Actionable Damages

Rockcliff next contends that Sedona fails to allege any injury supporting an actionable damages claim against Rockcliff, and cites to *Mascarenas v. Jaramillo*, which holds that damages based on "surmise, conjecture or speculation" cannot be sustained. 111 N.M. 410, 415 (1991); Doc. 64 at 14. The Court disagrees with Rockcliff's contention.

With some degree of specificity, Sedona's Amended Complaint does identify sufficient injury. In fact, for the listed items of broken concrete forms, need for additional concrete, concrete subcontractor remobilization costs, damaged wire, and additional labor, equipment and overhead to remediate damages, Sedona contends that the damages amount to $220,730.12. Doc 58 at 17; Doc. 69 at 13. In truth, Sedona need only allege injury *supporting* actual damages, and an allegation of observable physical damage resulting from the negligent maintenance and/or marking of a wastewater pipe, as is expressed in the Amended Complaint, is sufficient to meet this requirement. *See Central Sec. and Alarm Co., Inc. v. Mehler*, 121 N.M. 840, 848 (Ct. App. 1996) ("Although proof of the amount of damages need not be made with mathematical certainty, it cannot be based upon surmise, conjecture, or speculation.") (citing *First Nat'l Bank in Albuquerque v. Sanchez,* 112 N.M. 317, 323-24 (1991) and *Camino Real Mobile Home Park Partnership v. Wolfe*, 119 N.M. 436, 447, (1995)). It should be noted that this does not alone meet Sedona's requirements as to its negligence claims, as a lack of causation may sever these damages from Rockcliff's alleged conduct, but to the extent Rockcliff maintains that Sedona's claims as they currently stand are insufficient on their face to constitute an appropriate claim of injury-supported damages, Rockcliff's contention fails.

**III.    Negligence; Failure to Allege Sufficient Facts**

    **A.    Negligence**

Rockcliff contends that in making its negligence claim Sedona failed to satisfy the pleading requirements under Fed. R. Civ. P. 8 and 12(b)(6) because (1) Sedona's claim is implausible and (2) Sedona fails to allege facts establishing that Rockcliff breached a duty. Doc. 64 at 11. Upon its review of the Amended Complaint, however, the Court finds this not to be the case.

A negligence claim under New Mexico law requires the existence of a duty, a breach of said duty (generally based upon a standard of reasonable care), and a sufficient causal relationship between the breach and the damages incurred, namely, the breach must be a proximate cause and a cause in fact of the plaintiff's damages. *Herrera v. Quality Pontiac*, 134 N.M. 43 (2003); *see also Lopez v. Maez*, 98 N.M. 625, 630 (1982). Furthermore, a court must consider the foreseeability of the harm caused in determining a defendant's duty as a matter of law. *See Blake v. Pub. Serv. Co. of N.M.,* 134 N.M. 789 (2004) (public utility under contract with a city owes no duty of care to a person allegedly injured as a result of failure to provide or maintain streetlights); *see also Johnstone v. City of Albuquerque*, 140 N.M. 596, 600 (Ct. App. 2006).

Simply stated, the Amended Complaint satisfies the pleading requirements under the Federal Rules of Civil Procedure. Sedona clearly alleges a duty and the corresponding breach, and the allegations are plausible on their face. Paragraph 75 of the Amended Complaint states the following: "Rockcliff owed a duty to use ordinary care in relation to the poly line at issue in this action, including but not limited to maintenance, operation, burying, marking, securing, protecting, casing and repairing." Doc. 58 at 16. More specifically, the Amended Complaint alleges that:

> "Rockcliff did not adequately bury its poly line, did not mark its poly line so that Sedona would have known there was a shallow pipeline owned or operated it, did not obtain a County Permit for its poly line and did not bury its poly line at a depth of 48 inches as required by law, and did not maintain its poly line in an appropriate

> manner, and was otherwise negligent, thereby failing to exercise ordinary care for
> the safety of the property of others, namely Sedona, and the public which includes
> Sedona."

*Id.*; *see* New Mexico UJI 13-1604 ("Every person has a duty to exercise ordinary care for the safety of the person and property of others."); *see also Knapp v. Fraternal Order of Eagles*, 106 N.M. 11 (Ct. App. 1987) ("…there is also a duty for defendant to conduct activities in a reasonable manner. In addition, every person has a duty to exercise ordinary care for the safety of others.") (citing *Restatement (Second) of Torts* § 341A (1965); SCRA 1986, UJI 13-1604). Sedona contends in its complaint that Rockcliff's conduct was unreasonable under the circumstances, and that Rockcliff could have reasonably anticipated the damages caused by the ruptured pipe and that Rockcliff's breach of duty "actually and proximately caused Sedona to incur damage and loss," losses which include, *inter alia*, broken concrete forms, need for additional concrete, damaged wire, and otherwise remedial and remobilization costs. *Id.* at 16-17.

Sedona additionally alleges, and the Court takes as true under *Twombly*, that the rupture of the pipe took place within the territorial bounds of the public right of way. *Id.* at 8. Further, the conduct alleged as it relates to the rupture itself, namely the negligent burial of the pipe at "2 or 3 inches" beneath the surface of the ground on a public right of way, is more than sufficient for the Court to infer liability under *Iqbal*, and thus it is facially plausible. Accordingly, Rockcliff's argument—that the Amended Complaint is insufficient because the claims therein are "implausible"—fails. *Id.* at 8, 14.

### B.     Negligence Per Se

The Amended Complaint also charges Rockcliff with negligence per se under Resolution R-14-17 of Eddy County Regulation Section IV(C), which requires permitting for pipelines in the public rights of way for purposes of "prevent[ing] damage of County roads and danger to the public

using such roads for transportation." *Id*. at 12; s*ee* Doc. 69 at 9. This is perhaps a steeper negligence hill for Sedona to climb beyond the scope of this Memorandum Opinion and Order; however, at the motion to dismiss stage, the conduct described in the Amended Complaint is enough for this claim to survive Rockcliff's dispute of sufficiency under Rule 12(b)(6).

A finding of negligence per se requires the following: "(1) there must be a statute which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly, (2) the defendant must violate the statute, (3) the plaintiff must be in the class of persons sought to be protected by the statute, and (4) the harm or injury to the plaintiff must generally be of the type the legislature through the statute sought to prevent." *Archibeque v. Homrich*, 88 N.M. 527, 532 (1975); *see Rimbert v. Eli Lilly & Co.*, 577 F. Supp. 2d 1174, 1204 (D.N.M. 2008) (Browning, J.).

Consistent with the four requirements of *Archibeque*, (1) Sedona alleges that Resolution R-14-17 requires permitting to install a pipe beneath the public right of way in Eddy County, and imposes a duty on Rockcliff to comply with the requirements articulated in the Regulations attached to Resolution R-14-17 which state, in relevant part, that "all subsurface parallel installations must be at least forty-eight (48) inches below grade along the alignment of the installation," absent an explanation and request provided and made pursuant to the Resolution and subject to instruction by the Eddy County Public Works Director. Doc. 58 at 13, 15. (2) The Amended Complaint next alleges that, because the subject water pipe was such a subsurface installation, Rockcliff's burial of the pipe at only 2 to 3 inches beneath the surface violated Resolution R-14-17, which requires such pipes to be buried at a depth of 48 inches. *Id*. at 13. (3) Sedona alleges that it is a member of the public that the public right of way regulation sought to protect. And (4), the failure to bury the pipe consistent with the requirements of Resolution R-14-17 resulted in damages said regulation sought to prevent against Sedona. *Id*. at 12. Taken as true,

with factual ambiguities resolved and reasonable inferences drawn in favor of the non-movant Sedona, the Amended Complaint meets the requirements of *Archibeque* and accordingly survives Rockwell's contention that Sedona failed to plead negligence per se appropriately under Rule 12(b)(6).

### C.      The Removal of the Clamp

Under both a negligence and a negligence per se analysis, Sedona must additionally allege that Rockcliff's negligence was a proximate or actual cause of the supposed harm inflicted upon Sedona by a breach of Rockcliff's duty or statutory obligation. *See Herrera*, 134 N.M. 43; *see also Maez*, 98 N.M. at 630. Therefore, the primary issue presented in Sedona's negligence and negligence per se claims involves the clamp, the mysterious removal of which resulted in the damages incurred by both Sedona and Mosaic.

To reiterate the facts, one of Sedona's construction vehicles caused Rockcliff's water pipe to rupture. Doc 64 at 5-6; Doc. 26 at 1, 3. When the rupture initially occurred, a *de minimis* amount of fluid was released, Doc 64 at 5-6; Doc. 59 at 13, and Sedona contacted Mosaic to clamp the rupture, halting the release of fluid from the pipe. Doc 64 at 5-6; Doc 58 at 34-35. However, sometime later, some unknown person removed one of the clamps. Doc 64 at 5-6; Doc. 58 at 8.

With the clamp removed, the pipe spilled more fluid into the area, this time in enough abundance to cause damage to wiring and concrete forms which necessitated additional concrete, labor and equipment. Doc. 69 at 13. Rockcliffe was *later* made aware of the damage to its pipe and sent an employee to fix the pipe and coordinate clean-up of the site. Doc. 14.

Here, the Court must decide whether the facts alleged in the Amended Complaint could allow a reasonable jury to find that Rockcliff's negligence was a proximate cause of Sedona's damages. *See Iqbal*, 556 U.S. at 678. For the reasons set forth below, the Court finds that a

reasonable jury could find that Rockcliff was negligent as to its burying, maintaining and marking of the water pipe, and that said negligence was a proximate cause of the damages. The Court now turns to applicable law as to Rule 12(b)(6) and proximate cause.

Sedona's Amended Complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678. Plausibility, in the context of a motion to dismiss, means the plaintiff must plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility further refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)). Further, "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011).

Proximate cause is an issue of law "if no facts are presented that could allow a reasonable jury to find proximate cause." *Martinez v. First Nat'l Bank of Santa Fe*, 107 N.M. 268, 269 (Ct. App. 1987) (citing *Herrera v. Quality Pontiac*, 134 N.M. 43 (2003)) (internal quotation marks and citation omitted)). If a court finds negligence per se, the finder of fact must still determine whether the negligent per se conduct was the actual and proximate cause of the accident. *Archibeque*, 88 N.M. at 532-33.

Under New Mexico law, it is well-settled that a party whose alleged conduct results in reasonably foreseeable injury will not be relieved by the presence of intervening acts. *Lopez v. Maez*, 98 N.M. 625, 632-33 (1982) (citing *Reif v. Morrison*, 44 N.M. 201, 100 P.2d 229 (1940)). However, an intervening act may relieve the alleged wrongdoer if such act interrupts the *natural*

sequence of events or prevents the *natural and probable* results of negligent conduct and produces a different, unforeseeable result. *Id*. at 632 (citing *Harless v. Ewing*, 80 N.M. 149 (Ct. App.1969).

In so few words, Rockcliff's Motion alleges that the removal of the clamp from the pipe was an intervening act sufficient to interrupt the natural sequence of events stemming from Rockcliff's negligence. Doc. 64 at 14. Sedona alleges that the damage would not have occurred absent Rockcliff's negligence, and that said negligence is therefore a proximate cause of the damages incurred. Doc. 69 at 12. At this juncture, it is not the Court's job to determine whether Rockcliff's negligence or breach of duty caused the damage as a matter of fact, but rather, whether the Amended Complaint provides for a plausible claim of damages, or a claim supported by facts that *could* convince a reasonable jury that Rockcliff's conduct was a cause of foreseeable injury as a matter of law. *See Iqbal*, 556 U.S. at 678; *see also Martinez*, 107 N.M. at 269.

At this stage of the proceedings, the Court finds that the Amended Complaint plausibly supports a conclusion that but for Rockcliff's alleged negligence, the pipe would not have ruptured, and but for the rupture, the damage would not have occurred. Under both a traditional negligence analysis and the framework of negligence per se, Sedona's complaint meets the requirements of Rule 12(b)(6), as it clearly alleges that Rockcliff breached its duty of ordinary care in failing to mark the pipe, failing to cover the pipe, and failing to bury the pipe at the depth mandated by local ordinance. Doc. 58 at 13; 16.

For these reasons, the Court finds that the Amended Complaint pleads facts which support the reasonable inference that Rockcliff is liable for the alleged misconduct, and that a reasonable jury could conclude that Rockcliff's negligence as to the pipe's installation and maintenance caused the damages to Sedona regardless of the presence and eventual removal of the clamp. *See Iqbal*, 556 U.S. at 678. Accordingly, under both *Twombly* and New Mexico law, Sedona has

15

sufficiently "nudged [its] claims across the line from conceivable to plausible," and Rockcliff's argument that the removal of the clamp suffices to sever proximate cause fails. *Khalik*, 671 F.3d at 1191.

## IV.    Failure to Mitigate

Rockcliff next contends that Sedona failed to mitigate damages, and that under the doctrine of avoidable consequences as explored in *Martinez on Martinez ex rel. Martinez v. Vigil*, Sedona's recovery must be negated as not to compensate Sedona for damages it could have avoided. 105 N.M. 741, 745 (Ct. App. 1987) ("Under the doctrine of avoidable consequences, a person injured by the tort of another is not entitled to recover for losses that he or she could have avoided by the use of due care."). This argument warrants little discussion; failure to mitigate is alleged here as a basis for an affirmative defense, and is hardly determinative at the pleading stage. *See Hickey v. Griggs*, 106 N.M. 27, 30 (1987) ("Mitigation of damages is an affirmative defense and its burden of proof is on the defaulting party.") (citing *Bd. of Educ. of Alamogordo Pub. School Dist. No. 1 v. Jennings*, 102 N.M. 762 (1985)). Furthermore, as between Sedona, Mosaic and even Rockcliff, failure to mitigate in the form of insufficient clamping, removal of the clamp or a generally negligent response to the rupture is presently undetermined. Rockcliff's contention that Sedona's recovery should be negated for failure to mitigate would be better made once the proceedings have progressed enough to uncover which party, if any, failed to mitigate under *Vigil*.

## V.    Damages and Jurisdiction

Rockcliff finally contends that Sedona lacks a good faith basis for jurisdiction because the *de minimis* amount of fluid release that occurred prior to the clamping does not rise to the jurisdictional limit of $75,000 as required by 28 U.S.C. § 1332(a)(1). This argument relies on an assumption that the Court finds Rockcliff's conduct wholly severed from the ultimate damages by virtue of the removal of the clamp from the ruptured pipe. However, as explained herein, the

16

doctrine of avoidable consequences is not properly invoked at this stage in the litigation; only further proceedings may reveal that Rockcliff is not responsible for the $220,730.12 in damages alleged by Sedona. *See* Doc. 58 at 17.

**CONCLUSION**

For the reasons explained in this Memorandum and Order, the Court finds that (1) Rockcliff is not excused from the litigation under Fed. R. Civ. P. 17(a), (2) Sedona did not fail to allege an injury that supports actionable damages, (3) Sedona alleged facts sufficient for the Court to infer liability, (4) the removal of the clamp does not negate recovery under the doctrine of avoidable consequences, and (5) Rockcliff's jurisdictional challenge under 28 U.S.C. § 1332(a)(1) is unwarranted. Accordingly, the Court hereby **DENIES** Rockcliff's Motion to Dismiss Sedona's Third Party Claims.

**IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

17